# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA,
# AT HUNTINGTON

**SOUDAMANI SINGH,**

    Plaintiff,

v.      Civil Action No. 3:23-cv-00317

**PUBLIC LIBRARY OF SCIENCE**
**dba PLOS ONE,**

    Defendant.

## VERIFIED COMPLAINT FOR DAMAGES, TEMPORARY RESTRAINING ORDER AND INJUNCTION

Plaintiff, Soudamani Singh ("Plaintiff"), by and through counsel, alleges the following against Public Library of Science dba PLOS One ("Defendant"), in its claim for judgment and/or to seek a preliminary and permanent injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, against Defendant to prevent the dissemination of harmful material. In further support hereof, Plaintiff states as follows:

    1.    Plaintiff is an individual residing in Cabell County, West Virginia.

    2.    Upon information and belief, Defendant is a California based publishing corporation that disseminates material worldwide and *via* the internet, including within the State of West Virginia, and whose principal address is in San Francisco, California.

    3.    This Court has jurisdiction over the subject matter of this case, pursuant to 28 U.S.C. § 1332, because complete diversity exists between Plaintiff and Defendant and because the amount in controversy, exclusive of interests and costs, or the amount of harm that will occur in the absence of this Court granting an injunction will be in excess of $75,000.

4. This Court has personal jurisdiction over Defendant by way of West Virginia's Long Arm Statute, West Virginia Code § 56-3-33, as Defendant regularly solicits and contracts with authors and regularly disseminates its publications (or otherwise makes them available) within the State of West Virginia.

5. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because certain of the actions which led to the claims arising from this matter were transacted in Cabell County, West Virginia or through the internet with Plaintiff's IP Address being located within Cabell County, West Virginia. Venue is also proper in this Court because much of the harm that will be suffered in the event an injunction is not granted will occur within Cabell County, West Virginia.

6. In 2018, Plaintiff contracted with Defendant to publish an article in Defendant's medical journal on the topic of intestinal physiology.

7. The title of the article was "*Cyclooxygenase pathway mediates the inhibition of Na-glutamine co-transporter B0AT1 in rabbit villus cells during chronic intestinal inflammation*" (the "Article").

8. As part of the general process for publishing with Defendant, Defendant solicited a commitment from Plaintiff, and her co-authors, that the authors of the Article would agree to pay money if Defendant ultimately accepted the Article for publishing.

9. Defendant would only agree to review and analyze the Article if Plaintiff agreed to commit to paying money in the event Defendant accepted the Article.

10. Plaintiff's commitment to pay the funds should Defendant accept the Article was still not a guaranty that Defendant would ultimately accept the Article for publishing.

11. As part of its process to accept articles, Defendant thoroughly vetted the Article which included, *inter alia*, reviewing the data, exploring the scientific processes utilized in the

research, evaluating the conclusion of the Article as well as interviewing the authors to obtain answers to any inquires the publishing editors deemed necessary in an effort to ensure only quality articles are published that contain scientifically accepted methodologies were utilized to obtain conclusions that could be recreated.  In other words, Defendants fully vetted the Article to ensure it contained conclusions that could be scientifically proven and replicated by other researchers in the field and in furtherance of modernizing medical understandings within the relevant practice area.

12.     Plaintiff, and her colleagues, spent extensive hours fielding inquiries from the research editors employed by Defendants – most of which were content experts in the field of intestinal physiology.

13.     Following the extensive vetting process, Defendants accepted the Article including the data, scientific processes and ultimate conclusions set forth therein.

14.     Upon acceptance of the Article, Defendants demanded the money which it previously solicited from Plaintiff.

15.     Plaintiff, and the co-authors, submitted the funds and Defendant ultimately published the Article in 2018.

16.     In or around June 2022, Plaintiff, and her co-authors, discovered that one of the Figures which contained certain data points for one of the experiments in the Article had inadvertently contained data from another unrelated research article the authors had been previously drafting.

17.     The inadvertent inclusion of the wrong Figure in the 2018 publication of the Article did not change the data contained within the Article itself or in any way alter the conclusions of the Article; it was simply a scrivener's error in compiling all the material.

18. In an attempt to be thorough and transparent, Plaintiff, and her co-authors, self-reported the issue with the Figure to Defendant requesting that Defendant publish a "*Notice of Correction*," as is customary in these situations, wherein Defendant would publish a brief notice in a current, or future, publication which referenced the Article and contained a brief explanation regarding the Figure and containing the correct Figure that should have been included in the Article during its 2018 original publication date.

19. Included within Plaintiff's self-reporting on the issue of the Figure was a copy of the correct Figure.

20. Rather than simply publishing the "*Notice of Correction*," containing the explanation and correct Figure to the Article, Defendants research editors (not the same content-expert editors that previously vetted the Article) made numerous inquiries about the Article which were duplicative of the vetting process that Plaintiff had already reviewed with Defendant nearly four (4) years prior – when Defendant's research editors had accepted the research, data, scientific processes and conclusions related to the Article.

21. In an effort to be cooperative, Plaintiff engaged all of Defendant's second round of inquiries related to the Article.

22. Unfortunately, after roughly nine (9) months following Plaintiff's self-reporting of the Figure, Defendant sent Plaintiff a letter indicating that it would not be able to publish a "*Notice of Correction*" related to the Article (and its inadvertent inclusion of a single Figure), but was electing to publish a "*Notice of Concern*."

23. In the research publication world, a Notice of Concern has quite the negative connotation and implies a certain level of intentional misconduct (i.e. plagiarism, falsifying data, etc.) or that something otherwise nefarious has occurred with an article.

24. In fact, the Committee on Publication Ethics ("COPE") and the International Committee of Medical Journal Editors ("ICMJE"), both of which set the standards for publishing related to medical journals (including corrections, concerns and retractions) and both of which have been adopted by Defendants, advise that a Notice of Concern is reserved to address the following: (i) evidence of research or publication misconduct; (ii) findings are unreliable but the authors' institution will not investigate the matter; (iii) Investigation was not fair, impartial or conclusive; and (iv) an investigation is underway.

25. The ICMJE clearly states within its policy that "[h]onest errors are a part of science and publishing and require publication of a **correction** when they are detected."

26. Defendant plans to publish a "*Notice of Concern*," however, there have been zero allegations lodged by Defendants regarding research or publication misconduct.

27. Likewise, Plaintiff's institutions conducted an investigation into the error related to the Figure in the Article and cleared Plaintiff and her co-authors.

28. In fact, the joint inquiry committee stated that Plaintiff "and [her] colleagues did not commit research misconduct, but instead offered exemplary vigilance and diligence in detecting and correcting a mistake in published work."

29. If permitted to publish a "*Notice of Concern*" rather than correctly publishing a "*Notice of Correction*," as Defendant's own policies, as well as the policies set forth by COPE and ICMJE, dictate, then Plaintiff will suffer irreparable harm including, without limitation, reputational harm within the scientific community, loss of career advancement opportunities and loss of wages and future wages.

30. Additionally, if permitted to proceed with a "*Notice of Concern*," Defendant's unlawful actions could lead to consequences that have an impact on Plaintiff, as well as her co-

author's, ability to apply for and obtain federal grant research money which not only benefits Plaintiff's career and job security, but also potentially jeopardizes the institution's chances of obtaining federal grant money for future research by Plaintiff and her coauthors - given the association of Plaintiff with the institution.

**COUNT I – TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION**

31. Plaintiff incorporates each of the aforementioned paragraphs as if fully restated herein.

32. The United States Court of Appeals for the Fourth Circuit has held that the following factors are to be weighed and considered when granting a preliminary injunction:

A movant for a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.

*Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 188 (4th Cir. 2013).

Complaint as if fully set forth herein.

33. The Fourth Circuit has also held that the standard for a temporary restraining order is the same as that for entering a preliminary injunction. *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 (4th Cir. 2006).

34. In the present case, Plaintiff is likely to succeed on the merits as Defendants are breaching their own policies (the presence of which serve as a contractual term between the parties) as well as the standards set forth by COPE and ICMJE by attempting to publish a harmful "*Notice of Concern*" rather than the appropriate "*Notice of Correction*."

35. Plaintiff is likely to suffer harm through damage to reputation within the scientific research community as well as the loss of career advancement because a "*Notice of Concern*"

invariably implies misconduct by the authors – a fact which has already been investigated and cleared and Defendants are not alleging any misconduct on the part of Plaintiff or her colleagues.

36. The balance of equities supports a temporary restraining order because Defendants have sat on Plaintiff's self-reporting for roughly nine (9) months and only now wish to rush to publish a damaging "*Notice of Concern*" – certainly the equities favor a full evidentiary hearing before allowing Defendant's to publish especially considering the Article was originally published over four (4) years ago.

37. Finally, granting a temporary restraining order is in the best interests of the public. Plaintiff's team is responsible for applying for federal research grants and allowing the "*Notice of Concern*" to be published without a full evidentiary hearing (especially when Defendant has no basis) would jeopardize a current federal research grant that Plaintiff and her team are applying to renew.

38. Accordingly, Plaintiff seeks a temporary restraining order that prevents Defendant from publishing any "*Notice of Concern*" regarding the Article until such time as this Court can hold a full evidentiary hearing on the matter at which time Plaintiff seeks a permanent injunction on all such publications regarding the Article.

### COUNT II – BREACH OF CONTRACT – SPECIFIC PERFORMANCE

39. Plaintiff incorporates each of the aforementioned paragraphs as if fully restated herein.

40. At the time Defendant contracted with Plaintiff to publish the Article, the contract explicitly or implicitly provided that Defendant would adhere to certain policies regarding the appropriate publications regarding "*Notices of Concern*" versus "*Notices of Correction*" as

adopted by Defendant and as set forth by industry standards including those policies set forth by COPE and ICMJE.

41. Defendant's actions in attempting to improperly publish a "*Notice of Concern*" instead of a "*Notice of Correction*" as it relates to the Article constitute a breach of the agreement between the parties.

42. Additionally, Defendant already vetted and accepted the Article utilizing content expert research editors to review the Article – who previously accepted the Article and its data and conclusions.

43. Defendant's attempt to re-review the Article after it has already been approved and accepted constitutes an additional breach of the agreement between the parties.

44. Plaintiff will suffer damages which are the direct and proximate result of the aforementioned actions of Defendant.

45. Plaintiff seeks compensation for the actions of Defendant.

## **COUNT III – NEGLIGENCE**

46. Plaintiff incorporates each of the aforementioned paragraphs as if fully restated herein.

47. Defendant has a duty to comply with all industry standards with regards to responsible publishing in medical journals and to comply with all industry standards and policies regarding retractions, notices of concern and/or notices of correction.

48. Defendant breached that duty by failing to adhere to not only their own internal policies, but the policies commonly enforced within the industry and set by, *inter alios*, COPE and ICMJE.

49. Defendant has been, or will be damaged, by Defendant's breach of said duty.

50. Defendant is the direct and proximate cause of any damages suffered by Plaintiff.

## COUNT IV – DEFAMATION

51. Plaintiff incorporates each of the aforementioned paragraphs as if fully restated herein.

52. In the event Plaintiff's request for a temporary restraining order is not granted, then Defendant will have defamed Plaintiff through publishing false and defamatory statements about Plaintiff to a third party, or parties, which will cause Plaintiff damages including, without limitation, loss of reputation within the scientific research community, loss of career advancement opportunity and loss of wages.

53. There is no privilege for Defendant's statements.

54. Defendant's statements are not true nor based in opinion.

55. Accordingly, Plaintiff seeks compensation for the harm caused as the direct and proximate result of Defendant's actions.

## COUNT V – UNFAIR AND DECEPTIVE TRADE PRACTICES

56. Plaintiff incorporates each of the aforementioned paragraphs as if fully restated herein.

57. Plaintiff is a natural person as defined by West Virginia Code § 46A-1-102 and as protected by Article 6 of the West Virginia Consumer Credit and Protection Act ("WVCCPA").

58. Defendant has engaged in an unlawful and deceptive practice of soliciting articles from authors for publication in furtherance of their own economic benefit, accepting money and later rejecting said articles or, alternatively, engaging in a pattern of falsely publishing unlawful "*Notices of Concern*."

59. Defendant's action are prohibited by Article 6 of the WVCCPA including, without limitation, West Virginia Code § 46A-6-104.

60. Plaintiff is entitled to bring a private cause of action against Defendant for its unlawful, deceptive and otherwise unfair trade practices pursuant to West Virginia Code § 46A-6-106.

61. Plaintiff has suffered, or will suffer, damages as a result of Defendant's unlawful and deceptive conduct.

62. Plaintiff is entitled to recover its attorneys' fees, pursuant to West Virginia Code § 46A-5-104, related to the unlawful conduct and deceptive acts committed by Defendant.

**Wherefore**, Plaintiff seeks an order from this Court temporarily restraining Defendant from publishing or otherwise disseminating the proposed "*Notice of Concern*," a permanent injunction from any future publication or dissemination thereof, compensation for damages incurred as a result of the unlawful and harmful conduct carried out by Defendant, recovery of its costs in pursuing this action including, without limitation, reasonable attorneys' fees and for any and all further relief this Court deems fair and just.

**PLAINTIFF SEEKS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

                                                      SOUDAMANI SINGH

/s/ Matthew L. Ward
By Counsel

Matthew L. Ward, WV 11903
Dinsmore & Shohl LLP
611 Third Avenue
Huntington, West Virginia 25701
Phone: 304-691-8475
Fax:    304-522-4312
matthew.ward@dinsmore.com
    *Counsel for Soudamani Singh*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA,
AT HUNTINGTON

SOUDAMANI SINGH,

    Plaintiff,

v.                                    Civil Action No. _____

PUBLIC LIBRARY OF SCIENCE
dba PLOS ONE,

    Defendant.

## VERIFICATION

STATE OF __WV__     )
                              )
COUNTY OF __Cabell__ )

I, __Soudamani Singh__, being first duly sworn by the undersigned authority, state that I have reviewed the foregoing "*Verified Complaint for Damages, Temporary Restraining Order and Injunction*," and certify that all factual allegations contained therein are true to the best of my knowledge, information and belief.

_____

Sworn and subscribed in my presence this __7th__ day of __April__, 2023.

_____
Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Natasha Johnson
Dinsmore & Shohl LLP
611 Third Avenue
Huntington, WV 25701
My Commission Expires August 2, 2027

My Commission expires: __August 2, 2027__